IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAURICE MITCHELL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1207 |
| | § | |
| CHARLES C. PRATT, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Maurice Mitchell, a state inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit under 42 U.S.C. § 1983 complaining of the use of excessive force, denial of medical care, and retaliation by defendant prison officers Charles Pratt, Stephen Allee, Eric Gilcrease, and Jason Elliott. Defendants filed a motion for summary judgment (Docket Entry No. 39), to which Mitchell responded (Docket Entry No. 45).

Based on the pleadings, the motion and response, the probative evidence, and the applicable law, the Court GRANTS summary judgment dismissing the claim for denial of medical care, and DENIES summary judgment as to the claims for use of excessive force and retaliation. All claims brought against defendants in their official capacities are DISMISSED.

*Factual Allegations and Claims*

Mitchell asserts that on August 13, 2005, defendant Elliott, a male prison guard, made overt sexual advances to him. When plaintiff rejected the advances, Elliott retaliated

by immediately searching Mitchell's cell and charging him with a disciplinary infraction for possessing contraband stereo speakers. Mitchell complained to Elliott's supervisor, defendant Pratt, and filed grievances, but his complaints only acted to incite retaliation against him.

Mitchell complains that six days after he filed his initial grievance, a law librarian attempted to confiscate his ink pens as contraband. As he left the law library, Pratt and other officers stopped him in the hall and confiscated the pens and a postage stamp hidden inside his identification holder. The officers then told him to remove his clothes for a strip search. Mitchell initially refused but then complied after telling the officers he was not "playing no punk games" with them. The officers were told to lock Mitchell up. Pratt handcuffed one of Mitchell's hands, "slammed" him down on the concrete floor, and began kicking him, reportedly stomping on his head at least twice. Mitchell denies having attempted to strike out at the officers with his uncuffed hand. Mitchell states that after the assault, he was placed in a holding cell and was seen cell-side by an infirmary nurse who reported she saw "no visible injuries" on him. Mitchell was charged with a disciplinary infraction arising from the attack.

While he was in pre-hearing detention, Mitchell wrote to several public officials complaining about the attack. He was then charged with several purportedly false disciplinary cases, many if not all of which were withdrawn by the unit warden and not prosecuted. Mitchell ultimately was found guilty of creating a disturbance regarding the

attack, which he claims was the result of a conspiracy among the administration officers to blame him for the incident.

Mitchell claims that an old shoulder injury was re-injured during the attack, and that he had severe headaches for months after the incident. Petitioner seeks compensatory and punitive damages for the officers' use of excessive force and retaliation against him.

*Summary Judgment Standard of Review*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). All evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

*Eleventh Amendment Immunity*

Mitchell asserts claims against the defendants in both their official and their individual capacities. A suit against a state employee in his official capacity is a suit against

3

the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits individuals from filing suit in federal court against a state that has not waived its sovereign immunity. As the Fifth Circuit has repeatedly stated, Texas has not waived its sovereign immunity against prisoner suits. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("We twice have held that the Eleventh Amendment bars recovery of § 1983 money damages from TDCJ officers in their official capacity.") Therefore, Mitchell's claims against defendants in their official capacities are dismissed.

*Use of Excessive Force*

The Eighth Amendment governs an inmate's claim that prison officials used excessive force against him. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court has held that whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id*. In determining whether a use of force was employed maliciously and sadistically to cause harm, a court should consider all relevant factors, including: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Baldwin v. Stalder*, 137 F.3d 836,

839 (5th Cir. 1998). These identified factors are not exclusive, and each case must be judged on its own facts. *Baldwin*, 137 F.3d at 839.

Defendants argue they are entitled to summary judgment because the probative evidence shows that any injury Mitchell incurred as a result of the use of force was *de minimis*. Even assuming this were the determining factor, the probative evidence shows that Mitchell complained of shoulder pain and headaches after the incident, and that he was diagnosed shortly thereafter with a shoulder joint tear. (Docket Entry No. 39, medical records, pp. 23, 33, 52, 71.) This Court declines to hold a shoulder joint tear as *de minimis*. Although defendants assert these injuries were pre-existing and were not caused by the incident, no expert witness testimony supporting such claim appears in the record.

Whether an injury constitutes a serious or a *de minimis* physical injury is determined in no small part by the nature of the use of force itself. In this case, use of force records submitted by defendants show that they believed Mitchell failed to respond properly to the strip search order. The report states that as hand restraints were being applied, Mitchell struggled and raised a hand toward Pratt. Mitchell was then subdued and "taken down." While Mitchell was on the floor in hand restraints, Pratt "kicked said offender twice in the face with [his] right foot." (Docket Entry No. 39, Use of Force Report, p. 9.) Of particular concern to this Court are the following statements appearing in the report:

> Officers Bourne CO IV, Gilcrease, E., CO III, and Bradley, P. CO III all maintain that they never saw Sgt. Charles Pratt kick or place a foot on Offender Mitchell, Maurice #648121 during a reported UOF MA-03876-08-

5

>   05.   Sgt. Charles Pratt persist[s] that he inadvertently grazed Offender Mitchell's forehead with his knee.  Sgt. Pratt also denies that he kicked Offender or placed a foot on Mitchell.
>
>   Lieutenant Oliver Greeno and Officer Stewart, R. CO IV have both rescinded their original statements. Lieutenant Greeno now states he observed Sgt. Pratt kick Offender Mitchell twice in the head.  Officer Stewart['s] revised statement states that Sgt. Pratt placed his foot on Offender Mitchell's head.

*Id.*, p. 3.  Thus, there is probative evidence in the record that at least one of the defendants kicked Mitchell in the face or head while he was restrained on the ground, and placed a foot on his head.  The record, unaided by any summary judgment affidavits of the defendants, raises serious fact issues under *Gomez* as to any need for an officer to repeatedly kick Mitchell in the face and head or to step on his head under the circumstances shown in the record.

Courts should look to the seriousness of the injury as only one factor, among many, useful to determine whether the use of force evinces the wantonness and maliciousness needed to violate the constitution. *Hudson*, 503 U.S. at 7.  Only where the injury *and* the corresponding use of force are extremely minor, such as a prison guard twisting an inmate's ear and causing a bruise, will courts exclude a plaintiff from constitutional protection. *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006); *Siglar*, 112 F.3d at 193 (bruise caused by having ear twisted insufficient for Eighth Amendment purposes).

In *Brown*, the Fifth Circuit addressed a defendant's argument that the plaintiff's injuries were not severe enough to support an excessive force claim.  The *Brown* court

6

cautioned that the Fifth Circuit "has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim" under the Eighth Amendment. *Id.* As the Fifth Circuit explained,

> The Supreme Court in *Hudson* was concerned with a *de minimis* use of force showing, not a *de minimis* injury. Nonetheless, this Circuit has on occasion referred to *de minimis* injuries, although only with the caveat that when the force is 'repugnant to the conscience of mankind' the gravity of the injury *may be* irrelevant.

*Id.* at 386 n. 1(original emphasis). Although the Fifth Circuit recognized a certain degree of ambiguity in the case law as to whether a plaintiff must prove more than a *de minimis* injury in order to state an excessive force claim, it did not resolve the issue in *Brown*.

Viewing the evidence in the light most favorable to Mitchell as the nonmovant, a jury could conclude that defendants used significant if not unnecessary or unreasonable force against Mitchell. Weighing this together with Mitchell's resulting injuries, a jury could find that defendants used force maliciously and sadistically for the very purpose of causing harm. *See Brown*, 472 F.3d at 386 (officer was not entitled to qualified immunity where there was evidence he struck a prisoner several times in his back, head and shoulders without provocation); *Gomez*, 163 F.3d at 922 (reversing summary judgment in favor of prison officers where there was evidence that the officers knocked the inmate down and punched and kicked his head repeatedly). Summary judgment is denied on the excessive force claim.

*Retaliation*

To establish his claim for retaliation, Mitchell must present probative summary judgment evidence of motivation or a chronology of events from which retaliation may plausibly be inferred. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). By presenting probative evidence of both motivation and a chronology of events, Mitchell meets his burden of raising a genuine issue of material fact regarding, at minimum, Elliott's retaliatory actions in searching his cell for contraband following the thwarted sexual overtures, and in the defendants' filing serial disciplinary charges following Mitchell's complaints, letters, and grievances regarding the use of force incident. Summary judgment is denied on the retaliation claims.

*Denial of Medical Care*

Mitchell claims that after the assault, he was locked up instead of being taken to the prison infirmary. However, Mitchell admits that shortly after the assault, he was seen cell-side by an infirmary nurse who reported Mitchell had "no visible injuries." That Mitchell disagreed with the nurse's assessment of his medical condition and the decision not to take him to the infirmary does not give rise to a viable claim for deliberate indifference to serious medical needs. His claim constitutes a disagreement with medical care decisions rather than a cognizable claim of deliberate indifference under the Eighth Amendment. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Further, in reply to the Court's order to "Fully explain

8

the medical treatment that you claim that you needed but were denied," Mitchell answered "None[.]"  (Docket Entry No. 8.)

Mitchell's medical records show that he requested and received medical care for his post-incident complaints.  No probative evidence of deliberate indifference to a serious medical need is presented, and defendants are entitled to summary judgment on this issue.

## *Conclusion*

All claims against defendants in their official capacities are DISMISSED. Defendants' motion for summary judgment (Docket Entry No. 39) is GRANTED as to Mitchell's claim for deliberate indifference to serious medical needs, and DENIED as to his claims for use of excessive force and retaliation.

The Clerk will provide copies to the parties.

Signed at Houston, Texas on August 21, 2007.

_____
Gray H. Miller
United States District Judge